UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ADA SANTOS,

                        Plaintiff,                  **COMPLAINT**

    -against-

                                                            19 CV 1991

THE CITY OF NEW YORK, P.O. PETER MUELLER,
P.O.s JOHN and JANE DOE #1-5, individually and in
their official capacities, (the names John and Jane Doe      **JURY TRIAL DEMANDED**
being fictitious, as the true names are presently unknown),
VITUS GROUP, LLC, ARCO MANAGEMENT CORP.,
MULTIFAMILY MANAGEMENT SERVICES, LLC, and
LEON MCCOY,

                                    Defendants.

-----------------------------------------------------------------------X

      Plaintiff ADA SANTOS, by her attorney, ROSE M. WEBER, complaining of the defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

      1.    Plaintiff brings this action against defendants THE CITY OF NEW YORK, P.O. PETER MUELLER, P.O.s JOHN and JANE DOE #1-5 for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of her civil rights as said rights are secured by said statutes and the Constitutions of the State of New York and the United States. Plaintiff also asserts supplemental state law tort claims against defendants VITUS GROUP, LLC, ARCO MANAGEMENT CORP., MULTIFAMILY MANAGEMENT SERVICES, LLC, and LEON MCCOY.

**JURISDICTION**

      2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

4. Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff ADA SANTOS is a Latina, a citizen of the United States, and at all relevant times a resident of the City and State of New York.

7. That at all times hereinafter mentioned, plaintiff ADA SANTOS resided in a development called Richmond Gardens, in the County of Richmond, and the City and State of New York.

8. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

10. That at all times hereinafter mentioned, the individually named defendants P.O. PETER MUELLER and P.O.s JOHN and JANE DOE #1-5 were duly sworn police officers of

said department and were acting under the supervision of said department and according to their official duties.

11. Each and all of the acts of defendants P.O. PETER MUELLER and P.O.s JOHN and JANE DOE #1-5 alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW YORK.

12. Each and all of the acts of defendants P.O. PETER MUELLER and P.O.s JOHN and JANE DOE #1-5 alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

13. Hereinafter defendants THE CITY OF NEW YORK, P.O. PETER MUELLER, and P.O.s JOHN and JANE DOE #1-5 will be referred to as "Municipal Defendants."

14. That at all times hereinafter mentioned, Municipal Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

15. Defendant VITUS GROUP, LLC ("VITUS") was and is a foreign (Delaware) limited liability company, licensed to do business in the State of New York.

16. Defendant VITUS was and is a foreign (Delaware) limited liability company doing business in the State of New York.

17. That at all times hereinafter mentioned, defendant VITUS owned, operated, managed, maintained, and/or controlled Richmond Gardens.

18. Defendant ARCO MANAGEMENT CORP. ("ARCO") was and is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York and conducting its usual business in the State of New York.

19. That at all times hereinafter mentioned, defendant ARCO operated, managed, maintained, and/or controlled Richmond Gardens.

20. Defendant MULTIFAMILY MANAGEMENT SERVICES, LLC ("MMS") was and is a domestic limited liability company, duly organized and existing under and by virtue of the laws of the State of New York and conducting its usual business in the State of New York.

21. That at all times hereinafter mentioned, defendant MMS operated, managed, maintained, and/or controlled Richmond Gardens.

22. That at all times hereinafter mentioned, defendant LEON MCCOY was an employee, servant, and/or agent of defendants VITUS, ARCO and/or MMS and was acting under the supervision of said defendants and according to his official duties.

23. That at all times hereinafter mentioned, defendant LEON MCCOY was acting within the scope of his employment, and on behalf of his employers, defendants VITUS, ARCO and/or MMS.

24. Hereinafter defendants VITUS, ARCO, MMS, and LEON MCCOY will be referred to as "Private Defendants."

## INCIDENT FACTS

25. On January 13, 2017, at approximately 4:00 p.m., plaintiff ADA SANTOS was lawfully present inside her apartment within the premises designated as 229A Jersey Street, in the County of Richmond, City and State of New York.

26. At the aforesaid time and place, plaintiff ADA SANTOS was suddenly accosted by approximately six NYPD officers, including defendant P.O. PETER MUELLER.

27. Plaintiff ADA SANTOS was advised that defendant LEON MCCOY, the superintendant at Richmond Gardens, had claimed that he had seen plaintiff break his window.

28. Defendant LEON MCCOY had called 911 and maliciously and deliberately falsely reported that plaintiff ADA SANTOS had broken his window.

29. Defendant LEON MCCOY knew that the information that he provided during the 911 call was false.

30. When the defendant police officers arrived at the Richmond Gardens, defendant LEON MCCOY reiterated his malicious and false accusations.

31. Defendant LEON MCCOY knew that the information that he provided to the defendant police officers was false.

32. Upon information and belief, defendant LEON MCCOY importuned the defendant police officers to arrest plaintiff ADA SANTOS

33. Plaintiff ADA SANTOS advised the defendant police officers that she was involved in an active dispute with defendant LEON MCCOY, that she had reported him to the management office, and that he had made up the story so that he would not have to do his job.

34. Plaintiff ADA SANTOS showed the defendant police officers the soaking-wet carpet (from a burst pipe) that defendant LEON MCCOY was supposed to remove from her apartment and that was the source of the dispute.

35. Plaintiff ADA SANTOS showed the defendant police officers that at that very moment, defendant LEON MCCOY was standing across the street, laughing.

36. Plaintiff ADA SANTOS requested that the defendant police officers review videotape that was readily available in the on-site management office (which was next door to defendant McCoy's apartment) and that would refute defendant LEON MCCOY's false allegations.

37. Despite being aware that defendant LEON MCCOY was an unreliable source and

that there was animosity between him and plaintiff ADA SANTOS, the defendant police officers refused to review the videotape.

38. Defendant police officers failed to do any investigation whatsoever into defendant LEON MCCOY's allegations or to seek any sort of corroboration thereof.

39. Defendant P.O. PETER MUELLER handcuffed plaintiff ADA SANTOS and placed her under arrest, despite defendant's knowledge that he lacked probable cause to do so.

40. Defendant police officers transported plaintiff ADA SANTOS to the 120th precinct of the New York City Police Department in Staten Island, and from there to Central Booking.

41. Plaintiff ADA SANTOS was held and detained in police custody for approximately twenty hours.

42. Municipal and private defendants initiated criminal proceedings against plaintiff ADA SANTOS, despite defendants' knowledge that they lacked probable cause to do so.

43. Defendant LEON MCCOY signed a supporting deposition in which he knowingly falsely attested that he saw plaintiff ADA SANTOS punch and break his window.

44. Defendant LEON MCCOY later advised prosecutors that this was a lie.

45. During the period between January 13, 2017 and April 13, 2018, plaintiff ADA SANTOS was required to make numerous court appearances to defend herself in the criminal proceedings that defendants had initiated against her.

46. As a result of her arrest and prosecution, plaintiff ADA SANTOS lost her job.

47. On or about April 13, 2018, plaintiff ADA SANTOS was acquitted of all charges at a bench trial.

48. As a result of the foregoing, plaintiff ADA SANTOS sustained, *inter alia*, lost

wages, emotional distress, embarrassment, and humiliation, and deprivation of her constitutional rights.

## MONELL FACTS

49.     Both before and after the arrest of plaintiff ADA SANTOS, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

50.     The existence of the aforesaid custom and practice may be inferred from:

- NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

- the directive issued in 2012 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

- the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

- the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

- the information provided by whistle-blower police officer Adil Polanco that commanders

relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

- audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes: Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

- testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

- the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

- Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police

officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

- the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says*, Village Voice, June 7, 2010);

- the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*, http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

- a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

- testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

- the revelation in April 2015 by Anthony Miranda, chairman of the National Latino Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play

a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

- statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

- allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

- allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016); and

- allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016).

- allegations in November 2018 by Sergeants Benevolent Association president, Ed Mullins, that Capt. Kenneth Noonan threatening to "punch" or "kill" colleagues who "did not adhere to his aggressive quota-driven agenda for arrests and summonses." (Tina Moore & Juan

Gonzalez, *NYPD Sergeants Union Plans Protest Against 'Abusive' Staten Island Commander*, N.Y. Post, Nov. 17, 2018).

51. Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest plaintiff ADA SANTOS without probable cause and to manufacture evidence against her.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "51" with the same force and effect as if fully set forth herein.

53. All of the aforementioned acts of Municipal Defendants, their agents, servants and employees, were carried out under the color of state law.

54. All of the aforementioned acts deprived plaintiff ADA SANTOS of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

55. The acts complained of were carried out by defendants P.O.s "JANE DOE" #1 and #2 in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

56. The acts complained of were carried out by defendants P.O. PETER MUELLER and P.O.s JOHN and JANE DOE #1-5 in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

57. Municipal Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the

respective municipality/authority/business entity, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

58. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. As a result of the aforesaid conduct by Municipal Defendants, plaintiff ADA SANTOS was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

60. As a result of the foregoing, plaintiff ADA SANTOS' liberty was restricted for an extended period of time, she was put in fear for her safety, and she was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62. Municipal Defendants misrepresented and falsified evidence before the District Attorney.

63. Municipal Defendants did not make a complete and full statement of facts to the District Attorney.

64. Municipal Defendants withheld exculpatory evidence from the District Attorney.

65. Municipal Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff ADA SANTOS.

66. Municipal Defendants lacked probable cause to initiate criminal proceedings against plaintiff ADA SANTOS.

67. Municipal Defendants acted with malice in initiating criminal proceedings against plaintiff ADA SANTOS.

68. Municipal Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff ADA SANTOS.

69. Municipal Defendants lacked probable cause to continue criminal proceedings against plaintiff ADA SANTOS.

70. Municipal Defendants acted with malice in continuing criminal proceedings against plaintiff ADA SANTOS.

71. Municipal Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

72. Notwithstanding the perjurious and fraudulent conduct of Municipal Defendants, the criminal proceedings were terminated in plaintiff ADA SANTOS' favor on April 13, 2018, when she was acquitted at trial.

## FOURTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74. Municipal Defendants issued legal process to place plaintiff ADA SANTOS under arrest.

75. Municipal Defendants arrested plaintiff ADA SANTOS in order to obtain a collateral objective outside the legitimate ends of the legal process.

76. Municipal Defendants acted with intent to do harm to plaintiff ADA SANTOS

without excuse or justification.

## FIFTH CLAIM FOR RELIEF
### DENIAL OF DUE PROCESS VIA FABRICATION OF EVIDENCE
### UNDER 42 U.S.C. § 1983

77. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "76" with the same force and effect as if fully set forth herein.

78. Municipal Defendants created false evidence against plaintiff ADA SANTOS.

79. Municipal Defendants forwarded false evidence to prosecutors in the Richmond County District Attorney's Office.

80. Municipal Defendants misled juries, judges, and/or prosecutors by providing false testimony and proffering false evidence throughout the criminal proceedings.

81. In creating and forwarding false information to prosecutors, defendants deprived plaintiff ADA SANTOS of due process and violated her constitutional right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

## SIXTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE

82. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83. Each and every individual defendant had an affirmative duty to intervene on plaintiff ADA SANTOS' behalf to prevent the violation of her constitutional rights.

84. The individual municipal defendants failed to intervene on plaintiff ADA SANTOS' behalf to prevent the violation of her constitutional rights despite having had a realistic opportunity to do so.

85. As a result of the aforementioned conduct of the individual municipal defendants, plaintiff ADA SANTOS' constitutional rights were violated.

## SEVENTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

86. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87. Municipal Defendants arrested, incarcerated, and prosecuted plaintiff ADA SANTOS in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest, incarceration, and prosecution would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

88. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

89. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

90. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, arresting innocent persons in order to meet "productivity goals" (i.e., arrest quotas).

91. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff ADA SANTOS.

92. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff ADA SANTOS as alleged herein.

93. The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff ADA SANTOS as alleged herein.

94. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff ADA SANTOS was unlawfully arrested, incarcerated, and prosecuted.

95. Municipal Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff ADA SANTOS.

96. Municipal Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff ADA SANTOS's constitutional rights.

97. All of the foregoing acts by Municipal Defendants deprived plaintiff ADA SANTOS of federally protected rights, including, but not limited to, the right:

   A. Not to be deprived of liberty without due process of law;

   B. To be free from seizure and arrest not based upon probable cause;

   C. To be free from unwarranted and malicious criminal prosecution;

   D. To be free from malicious abuse of process;

   E. Not to have cruel and unusual punishment imposed upon her; and

   F. To receive equal protection under the law.

98. As a result of the foregoing, plaintiff ADA SANTOS is entitled to compensatory damages against the Municipal Defendants in the sum of one million dollars ($1,000,000.00),

and is further entitled to punitive damages against defendants P.O. PETER MUELLER, P.O.s JOHN and JANE DOE #1-5 in the sum of one million dollars ($1,000,000.00).

**PENDANT STATE CLAIMS AGAINST
VITUS GROUP, LLC, ARCO MANAGEMENT CORP.,
MULTIFAMILY MANAGEMENT SERVICES, LLC, and LEON MCCOY**

**FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
MALICIOUS PROSECUTION**

99. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, provided prosecutors with false information in an attempt to induce the prosecution of plaintiff ADA SANTOS.

101. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, importuned prosecutors to prosecute plaintiff ADA SANTOS.

102. As a result of the conduct of employees, servants and/or agents (including LEON MCCOY) of defendants VITUS, ARCO, and MMS, a criminal proceeding against plaintiff ADA SANTOS was commenced on or about January 13, 2017.

103. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, urged the continuation of said proceeding despite the fact that they knew or should have known that plaintiff ADA SANTOS had not committed any crimes, that there were no exigent circumstances justifying a warrantless arrest, and that there was no need for the arrest and imprisonment of plaintiff.

104. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, were directly and actively involved in the initiation of criminal proceedings against plaintiff ADA SANTOS.

105. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, knew or should have known that there was no probable cause to initiate criminal proceedings against plaintiff ADA SANTOS.

106. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, was motivated by actual malice in initiating criminal proceedings against plaintiff ADA SANTOS.

107. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, misrepresented and falsified evidence before the District Attorney.

108. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, did not make a complete and full statement of facts to the District Attorney.

109. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, withheld exculpatory evidence from the District Attorney.

110. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, was directly and actively involved in the continuation of criminal proceedings against plaintiff ADA SANTOS.

111. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, knew or should have known that there was no probable cause to urge the continuation of criminal proceedings against plaintiff ADA SANTOS.

112. Defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, was motivated by actual malice in urging the continuation of criminal proceedings against plaintiff ADA SANTOS.

113. Notwithstanding the perjurious and fraudulent conduct of defendants VITUS, ARCO, and MMS, through their employees, servants and/or agents, including LEON MCCOY, the criminal proceedings were terminated in plaintiff ADA SANTOS' favor on April 13, 2018, when she was acquitted at trial.

### SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT HIRING AND RETENTION

114. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "113" with the same force and effect as if fully set forth herein.

115. Upon information and belief, defendants VITUS, ARCO, and MMS failed to use reasonable care in the hiring and retention of the employees who caused plaintiff ADA SANTOS to be prosecuted.

116. Defendants VITUS, ARCO, and MMS knew, or should have known in the exercise of reasonable care, the propensities of said employees to engage in the wrongful conduct heretofore alleged in this Complaint.

117. As a result of the conduct of defendants VITUS, ARCO, and MMS, plaintiff ADA SANTOS sustained, *inter alia*, lost wages, emotional distress, embarrassment, and humiliation, deprivation of her constitutional rights, and special damages.

### THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT TRAINING AND SUPERVISION

118. Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "117" with the same force and effect as if fully set forth herein.

119.     Upon information and belief, defendants VITUS, ARCO, and MMS failed to use reasonable care in the training and supervision of the aforesaid employees who caused plaintiff ADA SANTOS to be prosecuted.

120.     As a result of the conduct of defendants VITUS, ARCO, and MMS, plaintiff ADA SANTOS sustained, *inter alia*, lost wages, emotional distress, embarrassment, and humiliation, deprivation of her constitutional rights, and special damages.

121.     As a result of the foregoing, plaintiff ADA SANTOS is entitled to compensatory damages against the Private Defendants in the sum of one million dollars ($1,000,000.00) and is further entitled to punitive damages in the sum of one million dollars ($1,000,000.00).

**WHEREFORE**, plaintiff demands judgment against the Municipal Defendants in the sum of one million dollars ($1,000,000.00) in compensatory damages and against the Private Defendants in the sum of one million dollars ($1,000,000.00) in compensatory damages, and further demands judgment against defendants P.O. PETER MUELLER and P.O.s JOHN and JANE DOE #1-5 in the sum of one million dollars ($1,000,000.00) in punitive damages and against the Private Defendants in the sum of one million dollars ($1,000,000.00) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:     New York, New York
           April 2, 2019

                                              /s
                                    ROSE M. WEBER (RW 0515)
                                    30 Vesey Street, Suite 1801
                                    New York, NY 10007
                                    (212) 748-3355